BERKOWSKI v HALL

Docket No. 78-950. Submitted April 17, 1979, at Detroit.—Decided June 20, 1979.

Thomas A. Berkowski was injured in an automobile collision and subsequently died. Joseph Berkowski, administrator of the estate, brought suit against the driver of the automobile which struck the automobile in which decedent was riding, the owners and operators of a bar which allegedly served intoxicants to the driver of the other automobile, members of the Dearborn Fire Department individually, and the City of Dearborn and the Dearborn Fire Department. Plaintiff alleged that the members of the Dearborn Fire Department negligently delayed transporting decedent to the hospital. Plaintiff sued the City of Dearborn and Dearborn Fire Department on a theory of vicarious liability for the negligence of the members of the Dearborn Fire Department. Defendants City of Dearborn and Dearborn Fire Department moved for accelerated judgment on the basis of governmental immunity. The Wayne Circuit Court, Andrew DiMaggio, J., granted the motion for accelerated judgment. Plaintiff appeals. *Held:*

1. The standard used to determine whether a governmental operation is a "governmental function" within the meaning of the governmental immunity statute is no longer the "common good of all" test, but rather the "governmental essence" test.

2. The "governmental essence" test is applicable to a suit which was pending on the date the Supreme Court adopted that test. There is no indication that the Supreme Court intended this new test to have prospective effect only, and there is no showing that applying the new test would result in injustice to governmental units.

3. The operation of an emergency medical services unit by a municipal fire department is not protected by the cloak of governmental immunity, since the operation of such a service

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 31.
[2] 20 Am Jur 2d, Courts § 233.
[3] 57 Am Jur 2d, Municipal, School and State Tort Liability § 27.

is not a governmental function under the "governmental essence" test adopted by the Supreme Court.

Reversed.

1. STATUTES — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — WORDS AND PHRASES.

The standard used to determine whether a governmental operation is a "governmental function" within the meaning of the governmental immunity statute is no longer the "common good of all" test, but is rather the "governmental essence" test (MCL 691.1407; MSA 3.996[107]).

2. MUNICIPAL CORPORATIONS — GOVERNMENTAL IMMUNITY — APPLICATION OF NEW TEST.

The "governmental essence" test for determining governmental immunity is applicable to a suit brought against a local governmental unit which was pending when the Supreme Court adopted that test, there being no indication that the Supreme Court intended this new test to have prospective effect only, and there being no injustice in applying the "governmental essence" test to pending cases.

3. MUNICIPAL CORPORATIONS — TORTS — GOVERNMENTAL IMMUNITY — EMERGENCY MEDICAL SERVICE — GOVERNMENTAL FUNCTION.

The operation of an emergency medical services unit by a municipal fire department is not protected by the cloak of governmental immunity, since the operation of such a service is not a governmental function under the "governmental essence" test adopted by the Supreme Court.

*James F. Finn* and *Stanley T. Bartnicki,* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen,* for defendants.

Before: DANHOF, C.J., and J. H. GILLIS and N. J. KAUFMAN, JJ.

DANHOF, C.J. This appeal entails application of the governmental immunity statute, MCL 691.1407; MSA 3.996(107), to the operation of an emergency medical services (EMS) unit by a mu-

nicipal fire department. The trial judge has granted accelerated judgment for the City of Dearborn and Dearborn Fire Department on grounds that such an operation is a "governmental function". We reverse.

Plaintiff's decedent was injured in an automobile collision. An emergency vehicle from the Dearborn Fire Department was summoned to the scene of the accident to administer first aid and transport victims to the hospital. Plaintiff alleges negligent delay by the vehicle's attendants in transporting plaintiff's decedent to the hospital caused the decedent's death. Plaintiff has brought suit against the City of Dearborn and Dearborn Fire Department on a theory of vicarious liability for the attendants' negligence.

When moving for accelerated judgment, the city and fire department relied extensively on this Court's decision in *Parvu v Harrison Twp Fire Dep't,* 75 Mich App 484; 255 NW2d 655 (1977). In *Parvu,* we specifically held the operation of an EMS unit is a "governmental function" under the "common good of all" test formulated in *Gunther v Cheboygan County Road Comm'rs,* 225 Mich 619; 196 NW 386 (1923). The *Parvu* panel analogized the operation of an EMS unit to the operation of a public hospital, which had been held to be governmental in several cases under the "common good of all" test. See *e.g., Nicholson v Detroit,* 129 Mich 246; 88 NW 695 (1902). In their brief on appeal, the defendants city and fire department again relied on *Parvu.*

Since briefs were submitted in this case, the Supreme Court has altered the definition of "governmental function". The test no longer is whether the operation in question is for the common good, but instead, whether it is "of essence to

governing". *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978).

Applying the "governmental essence" test in *Parker v Highland Park, supra,* a majority of four, composed of Justices KAVANAGH, LEVIN, FITZGERALD and MOODY, found the operation of a general hospital by a municipality to be nongovernmental. Thereby, the majority overruled *Nicholson* and, by apparent analogy, *Parvu.* In a companion case, *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), a different majority of four, composed of Justices WILLIAMS, COLEMAN, RYAN and MOODY, found the operation of a mental hospital to be governmental.

In both cases, Justices WILLIAMS, COLEMAN and RYAN rejected the "governmental essence" test. They reasoned such a test was contrary to the legislative directive to look to the common law, as it stood at the time of the immunity statute's enactment, for purpose of defining governmental tort liability. Justice MOODY, who provided the swing vote in each case, adopted the "governmental essence" test, but found the operation of a mental hospital had attributes essential to governing. Specifically, he based his distinction between general and mental hospitals on differences in (1) competition between public and private hospitals, (2) financial involvement by the state, (3) state responsibility for the placing of patients, (4) public need for the segregation of patients, and (5) voluntary nature of commitment.

At oral argument in the instant case, the city and fire department responded to *Parker* and *Perry* in two ways. First, defense counsel contended the "governmental essence" test should be given prospective effect only, according to the

principles announced in *Parker v Port Huron Hospital,* 361 Mich 1; 105 NW2d 1 (1960). Defense counsel asserted public bodies have substantially relied on the old rule, and have failed to protect themselves by purchasing available insurance. Therefore, counsel maintained, the operation of an EMS unit for purposes of this cause of action is governmental under the "common good of all" test as applied in *Parvu.* Secondly, the city and fire department claimed, even if the "governmental essence" test is given present effect, operation of the EMS unit in question here is governmental. Defense counsel argued the operation is more like the operation of a mental hospital than a general hospital, since it is part and parcel of a public fire department and since public fire departments are not in significant competition with private fire departments.

We hold the "governmental essence" test is applicable to the present case. If the test was not intended to have present effect, we believe the majority in *Parker v Highland Park, supra,* would have said so. In *Parker v Port Huron Hospital, supra,* and in other cases overruling longstanding precedent, *e.g., Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), *Bricker v Green,* 313 Mich 218; 21 NW2d 105 (1946), the Supreme Court has expressly delimited the effective dates of decision.

Moreover, even if the "governmental essence" test is to be given prospective effect, an exception should be made for cases, like the one here, that were pending when the test was adopted. In determining whether any rule of law should have retroactive or prospective effect, and to what extent, Justice EDWARDS has written:

"It is evident that there is no single rule of thumb which can be used to accomplish the maximum of justice in each varying set of circumstances. The involvement of vested property rights, the magnitude of the impact of decision on public bodies taken without warning or a showing of substantial reliance on the old rule may influence the result." *Williams v Detroit, supra,* at 266.

No doubt the Supreme Court's adoption of the "governmental essence" test will have a profound impact on public bodies in this state. The present appellees have not shown (merely asserted) substantial reliance on the old rule, but we can take notice of that probability. Still, the change was not entirely without warning. Courts of this state and other jurisdictions for years have been steadily eroding the doctrine of governmental immunity, especially as to municipalities. See *Williams v Detroit, supra.* Further, the detriment public bodies may have incurred in reliance on the old test for governmental immunity must be balanced against the injuries suffered by plaintiffs which, according to the most enlightened thinking, should be compensable by governmental agencies. Thus, we find no injustice in applying the "governmental essence" test to cases pending when the test was adopted.

Applying that test to the facts of this case, we hold the operation of the subject EMS unit is not a "governmental function". Searching for the factors enumerated by Justice Moody in *Parker* and *Perry,* we do not find the attributes that would make the operation essentially governmental.

The appellees' focus on competition between private and public fire departments in their principal operations is misplaced. Clearly, in *Parvu* the panel focused on the precise operation involved,

rather than overall or principal departmental operations, in applying the then-accepted definition of "governmental". That focus was correct under prior case law. See *Dohm v Acme Twp,* 354 Mich 447; 93 NW2d 323 (1958). The only relevant change in the law since *Parvu* has been in the definition of "governmental".

Thus, we find the Dearborn Fire Department's operation of the subject EMS unit is more like the operation of a general hospital than a mental hospital. According to *Parker* and consistent with *Perry,* therefore, the operation is not protected by the cloak of governmental immunity.

Reversed. No costs, a public question.